Shirley H. Rosenberg v. Commissioner.
Rosenberg v. Commissioner
Docket No. 5484-66.
United States Tax Court
T.C. Memo 1968-151; 1968 Tax Ct. Memo LEXIS 148; 27 T.C.M. (CCH) 747; T.C.M. (RIA) 68151; July 17, 1968. Filed Clyde W. Chapman, 909 Fulton Federal Bldg., Atlanta, Ga., for the petitioner. James D. Burroughs, for the respondent. DAWSON
Memorandum Opinion DAWSON, Judge: Respondent determined the following income tax deficiencies against petitioner: Year
Deficiency
1961
$166.44
1962
382.96
1963
386.53
*149 This case was submitted by the parties under Rule 30 of the Court's Rules of Practice. The only issue for decision is whether amounts received by the petitioner in 1961, 1962 and 1963 from her former husband, pursuant to a separation agreement, are taxable to her as alimony payments or excludable from her income as child support payments. If the amounts are adjudged to be alimony, respondent concedes that the petitioner is entitled to the dependency exemptions claimed for her three children for 1962 and 1963. On the other hand, if the amounts, the petitioner concedes that she payments, the petitioner concedes that she is not entitled to any dependency exemptions for the three children for 1962 and 1963. All of the facts and pertinent documents have been stipulated and are adopted herein as our findings of facts. Shirley H. Rosenberg (herein called petitioner) was a legal resident of Atlanta, Georgia, at the time she filed her petition in this proceeding. She filed her individual Federal income tax returns for the years 1961, 1962 and 1963 with the district director of internal revenue at Atlanta, Georgia. Petitioner was formerly married to Philip Rosenberg (herein called *150 Philip). Because of marital difficulties, petitioner and Philip separated on December 16, 1959. Three children were born of the marriage. The names of the children and their ages as of February 1960 are: Chester Rosenberg, age 12; Leslie Rosenberg, age 8; Mitzie Rosenberg, age 7. Divorce proceedings were instituted by petitioner by the filing of a petition for divorce in the Superior Court of DeKalb County, Georgia, in February 1960. In paragraph 7 of the petition for divorce the petitioner requested temporary and permanent alimony for herself and temporary and permanent support for her minor children. On July 12, 1961, the petitioner and Philip entered into a separation agreement, which provided, in pertinent part, as follows: WHEREAS said parties are desirous of entering into an Agreement for the support, maintenance and education of said children and in lieu of alimony to Second Party; NOW, THEREFORE, in consideration of the premises and the mutual benefits flowing from each party hereto to the other, IT IS MUTUALLY AGREED AS FOLLOWS: 1. First Party shall pay to Second Party as alimony, support and maintenance of their minor children, to-wit: CHESTER ROSENBERG, LESLIE *151 ROSENBERG and MITZIE ROSENBERG, the sum of $280.00 per month, payble monthly or semi-monthly hereafter and including the month of July, 1961, which said sum shall continue until Second Party shall remarry, at which time said amount shall be reduced to $150.00 per month at the time of such remarriage. The remaining $150.00 per month shall continue to Second Party as support for the welfare, maintenance and education of said minor children. 2. In the event any one or more of said children shall reach the age of twenty-one (21) years, marry or become self-supporting, then the amount then being paid to Second Party for the support of said children shall be reduced by the sum of $50.00 per month. In the event of the death of either of said children, the amount to be paid to Second Party for the support of said children shall likewise be reduced by the sum of $50.00 per month. * * * 8. The payment of the sums herein referred to by First Party to Second Party is made in lieu of, and settlement of any and all claims which Second Party has or may hereafter have for alimony or support of the parties' minor children, hereinbefore named. On July 20, 1961, the DeKalb Superior Court entered *152 the following order: The alimony and child support agreement entered into between plaintiff and defendant in the above styled case, dated July 12, 1961, READ AND CONSIDERED. 749 IT IS HEREBY ORDERED that said alimony and support agreement be made a part of the record in said case and in the final decree to be taken in connection therewith. On July 20, 1961, the DeKalb Superior Court entered a Final Judgment and Decree in the divorce proceeding instituted by the petitioner against Philip, which provided, in part, as follows: It is further ordered that the alimony agreement entered into by plaintiff and defendant dated July 12, 1961, is hereby incorporated in and made a part of this final judgment and decree. It is further ordered that the defendant shall comply with the terms of said alimony agreement. In accordance with the separation agreement of July 12, 1961, Philip made the following total payments for 1961, 1962 and 1963 to the petitioner: Year
Total Payments
1961
$1,680
1962
3,360
1963
3,360
Petitioner reported the following amounts of the payments received from Philip during 1961, 1962, and 1963 as constituting alimony on her Federal *153 income tax returns for those years: Year
Amount
1961
$ 780
1962
1,560
1963
1,560
In his notice of deficiency dated June 30, 1966, respondent determined that the entire amounts paid to petitioner by Philip during 1961, 1962, and 1963 should have been reported as gross income, and therefore respondent increased petitioner's taxable income for the years in question by the respective amounts of $900, $1,800, and $1,800. Petitioner now contends that all of the amounts received by her from Philip in 1961, 1962, and 1963 (including amounts previously reported by her as alimony) constitute child support payments which should be excluded from her gross income under the provisions of section 71(b), Internal Revenue Code of 1954. Respondent, on the other hand, takes the position that all the amounts constitute alimony payments which should be included in petitioner's gross income under section 71(a). We agree with respondent. We believe the separation agreement as a whole shows that the parties intended the payments as alimony for the petitioner and as support and maintenance for the children. The separation agreement, which was incorporated *154 in the Final Judgment and Decree of Divorce, contains three "whereas" or recital clauses immediately preceding the operative provisions. The third "whereas" clause states that the "parties are desirous of entering into an Agreement for the support, maintenance and education of said children and in lieu of alimony" to the petitioner. The operative provisions of the agreement are set forth in ten numbered paragraphs, the first of which provides that Philip shall pay to the petitioner "as alimony, support and maintenance of their minor children, * * * the sum of $280.00 per month." The first paragraph also provides for a reduction of payments to $150 per month in the event petitioner remarries, and this amount is to continue to the petitioner "as support for the welfare, maintenance and education" of the three children. Paragraph two of the operative provisions provides for a $50 reduction for each child as he reaches the age of 21 years, marries, becomes selfsupporting or in the event of his death. The "whereas" clause says "in lieu of alimony" and the first paragraph of the operative provisions provides that Philip shall pay a sum "as alimony, support and maintenance of their minor *155 children." These provisions of the agreement are inconsistent with each other and are susceptible to more than one construction. Petitioner's contention that all payments were for child support implies two different uses of the word "alimony." Respondent contends no such intention was present at the time the agreement was executed or manifested herein by the parties. Thus the question is raised as to what is the proper usage of the word "alimony" in the agreement. Words in a contract are ordinarily to be given their primary meaning at the time of the execution of the contract. Asa G. Candler, Inc. v. Georgia Theater Co., 148 Ga. 188, 96 S.E. 226 (1918). They should be interpreted in their plain, ordinary, and popular sense. Generally, "alimony" is used to designate payments which a husband makes to a wife under court order for her support pending divorce action or after divorce has been granted. Alimony, in other words, is popularly and commonly thought of as support for the wife. The evidence here indicates that the word was used, and was intended to be used, in the same sense in this agreement. Petitioner's argument that "alimony" was used as a synonym in the operative *156 provisions of the agreement to refer to maintenance and support of the children rests on 750 a precarious foundation. A reasonable interpretation of the agreement refutes it. Petitioner's own reporting of certain amounts in her returns as "alimony" refutes it The usage of the word "alimony," as distinguished from support and maintenance, in the petition for divorce and other provisions of the agreement also refutes it. Petitioner used the word "alimony" in seeking support for herself and the word "support" in seeking an award for the children in paragraph 7 of the petition. The third "whereas" clause reflects that the word "alimony" was not being used to refer to support and maintenance of the children. In the first paragraph of the operative provisions it is expressly stated that the $150.00, remaining after petitioner remarries, shall continue "as support for the welfare, maintenance and education" of the children. Why was the word "alimony" not used in each of these instances to refer to child support if petitioner intended to use it as a synonym for support for the children? She obviously knew the generally accepted and common usage of the word "alimony." The distinctions *157 employed by the petitioner in the petition and agreement are to precise for petitioner to now claim that the word "alimony" was being used as a synonym for support for the children. A contract in settlement of a claim for alimony or child support stands upon the same basis as other contracts to the extent that it is subject to construction by a court. The law which exists at the time and place of the making of a contract enters into and forms a part of it. McKie v. McKie, 213 Ga. 582, 100 S.E. 2d 580 (1957); Brown v. Farkas, 195 Ga. 653, 25 S.E. 2d 411 (1943). In the construction of contracts, reasonableness is the watchword. The language used by the parties should receive fair, reasonable, and practical construction, since it is presumed that the parties contracted with reference to fair, reasonable, and practical results. This Court cannot make a new contract for the parties or rewrite their contract under the guise of construction. State law controls in determining the legal effect of a contract executed pursuant thereto. Poe v. Seaborn, 282 U.S. 101 (1930); Helvering v. Stuart, 317 U.S. 154 (1942); Superior Pine Products Company v. Williams, 214 Ga. 485, 106 S.E. 2d 6 (1958). *158 In the construction of a contract the cardinal rule is to ascertain the intention of the parties, and the whole contract should be considered in arriving at the construction of any part. Peacock Construction Co. v. West, 111 Ga. App. 604, 142 S.E. 2d 332 (1965) The meaning of the agreement should be gathered from the entire context, and not from particular words, phrases, clauses, or detached or isolated portions of the agreement. The words and acts of the parties must be given effect in accordance with the meaning which they would convey to reasonable men at the time of their use. The legal obligations of the parties to this separation agreement must be fixed by the paragraphs thereof. The only purpose of the first three "whereas" or recital paragraphs is to identify the subject matter about which the parties were contracting. Recital paragraphs are not, strictly speaking, parts of the contract unless adopted as such by reference thereto. Such paragraphs indicate only the background of an agreement and do not generally have the force of contractual stipulations. 17 Am. Jur. 2d., Contracts, § 268 (1964). In this case the recital paragraphs have not been adopted by *159 reference thereto in the operative provisions of the agreement. The obligations of the parties to each other are not fixed by the terms of these recitals. The only purpose of the recitals is to limit the obligations which the parties have taken upon themselves or to aid in interpreting any ambiguous language used in expressing such obligation. While recitals are considered in construing the contract, they are not the basis of a legal and binding obligation of the parties. Legal obligations must be determined by the operating provisions since they are more vital and important. In this case it appears the third "whereas" clause and the first paragraph of the operative provisions are both clear and unambiguous, but may be inconsistent with each other since the word "alimony" should certainly have the same meaning in both references. In such instances the operative provisions prevail. See Wilson v. Towers, 55 F. 2d 199, 200 (C.A. 4, 1932), where the Court of Appeals said: The rule has long been established that: "If the recitals are clear and the operative part is ambiguous, the recitals govern the construction. If the recitals are ambiguous, and the operative part is *160 clear, the operative part must prevail. If both the recitals and the operative part are clear, but they are inconsistent with each other, the operative part is to be preferred." [Italics supplied.] 751 See also Central Georgia Electric Membership Corporation v. Georgia Power Co., 217 Ga. 171, 121 S.E. 2d 644 (1961), where the Supreme Court of Georgia stated: If the apparent inconsistency is between a clause that is general and broadly inclusive in character and one that is more limited and specific in its coverage, the latter should generally be held to operate as a modification and pro tanto nullification of the former. Since it is plain that the operative provisions of the separation agreement must prevail in this case, the payments were made to the petitioner for her benefit as well as the benefit of the children. As we see it, the logical, fair and reasonable construction of the separation agreement of July 12, 1961, is that the $280 per month was being paid as support for the petitioner and the three minor children. Petitioner's own interpretation, as manifested by her reporting certain sums as alimony, shows this to have been the intention of the parties. *161 This conclusion is buttressed by the fact that the petitioner requested alimony in her petition and the fact that the first and second paragraphs of the operative provisions of the agreement reflect that only $150 of the $280 is child support. In the event petitioner remarries, the payments are to be reduced to $150 per month. After her marriage, this amount of $150 per month is to continue to her "as support for the welfare, maintenance and education" of the minor children. As we pointed out in Geraldine E. Grummer, 46 T.C. 674 (1966), "Congress intended to let the parties to a divorce dicatate the tax consequences of periodic payments by the language of the divorce decree or written agreement executed incident thereto." The parties must make their intentions clearly known and, if not, suffer the consequences of any ambiguity or inconsistency. Commissioner v. Lester, 366 U.S. 299 (1961). This brings us to the core questions: What is the legal effect of the first paragraph of the operative provisions of the separation agreement? Are the words, "as alimony, support and maintenance of their minor children," sufficient to exclude from income under section 71(b) *162 the amounts received by petitioner? Section 71(b) excludes from the coverage of subsection (a) of section 71 only "that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of moecy or a part of the payment, as a sum which is payable for the support of minor children of the husband." Although the payments here were made for the support of both the petitioner and children, no amount of money or specified part of any payment was "fixed" as a sum payable for the support of children as required by section 71(b). See and compare Sara Nicoll Gotthelf, 48 T.C. 690 (1967), on appeal (C.A. 2), which is sharply distinguishable. The instant case is controlled by the Supreme Court's decision in Commissioner v. Lester, supra. The agreement in the Lester case provided that the "husband agrees to pay the wife for the support and maintenance of herself and the children of the parties" certain amounts of money. The husband deducted all payments as alimony and the Commissioner disallowed one-half of these amounts. The Commissioner contended that the amount paid for child support could be computed since the agreement reduced *163 one-sixth of the payments whenever any of the children married, became emancipated or died, and all payments were to cease upon the wife's remarriage. There were three children. This Court sustained the Commissioner on the basis that all payments should not be treated as alimony when the terms of the agreement contain a reasonable indication of how the total payments are to be divided. We felt a reasonable basis for determining child support existed. However, the Court of Appeals for the Second Circuit reversed our decision and held that the agreement did not "fix" with requisite clarity any specific amount or portion of the periodic payments as payable for the support of the children and that all sums paid to the wife under the agreement were deductible by the husband as alimony. The Supreme Court affirmed the Court of Appeals. In rendering its opinion, the Supreme Court discussed the legislative history of section 22(k) of the Internal Revenue Code of 1939, the predecessor of section 71 of the 1954 Code, and stated (p. 303): The agreement must expressly specify or "fix" a sum certain or percentage of the payment for child support before any of the payment is excluded from the wife's *164 income. The statutory requirement is strict and carefully worded. It does not say that "a sufficiently clear purpose" on the part of the parties is sufficient to shift the tax. It says that the "written instrument" must "fix" that "portion of the payment" which is to 752 go to the support of the children. Otherwise, the wife must pay the tax on the whole payment. We are obliged to enforce this mandate of Congress. Similarly, the agreement here involved does not "fix," in terms of an amount of money or a part of the payment, a sum which is payable for the support of the three children. No doubt some portion of the total payments was intended for use in supporting the children. But Lester forbids any speculation on our part. The award is to the group as a family. We cannot prorate it among them so as to separate the amount awarded to the wife and the children. The word "fix," as used in the statute, means "expressly specify." The fact that an agreement shows a sufficiently clear purpose on the part of the parties that a particular portion of the payment was for child support has been held to be insufficient. Metcalf v. Commissioner, 343 F. 2d 66 (C.A. 1, 1965). *165 Certainly this separation agreement is sufficiently clear as to the intended nature of the payments but more specificity is required. We think the operative provisions of the instrument must expressly specify or fix a sum certain or a percentage of the payment as child support before it can be excluded from the wife's income. Child support must be specifically designated in the agreement and not left to some computation based on inference or conjecture as to what portion will constitute alimony and what portion will constitute child support payments. Gloria P. Johnson, 45 T.C. 530 (1966). The agreement in this case makes no allocation of the $280 a month to be paid to the petitioner as between alimony and support for the three children. The fact that the reduction of payments when petitioner marries or when the children marry, die or become emancipated can be ascertained is insufficient to fix a portion of such payments as support. Commissioner v. Lester, supra. This case is like Fleming v. Patterson, an unreported case (N.D. Ala., 1963), where the agreement provided that the husband agreed to pay the wife "as alimony and support and maintenance for *166 the said minor children the sum of $150 per month." The wife contended that the agreement, read as a whole, disclosed that the parties earmarked or designated the payments to be made, one part to be payable for the support of children, with sufficient clarity as to determine which is which, or in the alternative that such agreement was ambiguous and that resort to extrinsic evidence contained in certain affidavits made it clear that all payments after February 1, 1955, were intended solely for support of the children. The District Court granted the Government's motion for summary judgment, stating that the teaching of Lester foreclosed the plaintiff's contentions. The only difference between this case and Fleming is that "alimony" and "support" are separated by a comma rather than the word "and". This difference is unimportant because it is the words, not the punctuation, which are the controlling guide in the interpretation of the separation agreement. Accordingly, we hold that the total amounts paid to petitioner by Philip during the years 1961 through 1963 are taxable to her as alimony, i.c., ordinary income, pursuant to section 71(a). Decision will be entered under Rule 50. *167